UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| In the matter of: <br> JERRY DEAN FERGUSON and <br> JULIE RENE FERGUSON, <br>  Debtors. <br>  <br> Appeal of: <br> WEST CENTRAL FS, INC. | Case No. 17-1029 <br> Appeal from Bankr. Case No. 10-81401 |

# ORDER AND OPINION

West Central FS, Inc. ("West Central") brings this appeal from the January 5, 2017 Order issued by United States Bankruptcy Judge Thomas Perkins. That Order sustained the Chapter 7 Trustee's Objection to the secured claims of West Central and approved the Amended Trustee's Final Report. For the reasons set forth below, the Bankruptcy Court's January 5, 2017 Order is AFFIRMED.

## BACKGROUND

The facts and arguments of the Parties in this case have been recited in detail in the Bankruptcy Court's two marshaling opinions, this Court's opinion reversing the Bankruptcy Court and remanding, and the Seventh Circuit's opinion dismissing the appeal for lack of jurisdiction. See *In re Ferguson*, 10-81401, 2011 WL 5910659 (Bankr. C.D. Ill. Nov. 28, 2011) (hereinafter *Ferguson I*), *on reconsideration*, 10-81401, 2013 WL 4482445 (Bankr. C.D. Ill. Aug. 20, 2013) (hereinafter *Ferguson II*), *rev'd and remanded sub nom. Ferguson v. W. Cent. FS, Inc.*, 14-1068, 2015 WL 5315612 (C.D. Ill. Sept. 11, 2015) (hereinafter *Ferguson III*), *appeal dismissed sub nom. In Matter of Ferguson*, 834 F.3d 795 (7th Cir. 2016) (hereinafter *Ferguson IV*). The Court incorporates the facts and arguments by reference and will summarize here only as necessary.

1

This case began when Jerry and Julie Ferguson ("Debtors") filed a petition under Chapter 12 of the Bankruptcy Code on April 28, 2010, seeking to reorganize their family farming organization. At the time of filing, the Fergusons owed a $300,000 debt to First Community Bank ("FCB"), which was secured by a first mortgage on the Debtor's real estate, a first priority lien on farming equipment, and a first priority lien on 2009 crop proceeds. The Debtors also owed $176,000 on a loan from West Central, secured by a second priority lien on the equipment and crop proceeds only.

The equipment was sold post-petition and generated $170,000 in proceeds, which were held by the Chapter 12 Standing Trustee. Together with $68,000 in crop proceeds, the sale of the Debtors' personal property yielded $238,000. Largely because of the sale of the equipment and crops, the Debtors incurred federal and state tax liabilities in excess of $210,000 for 2010. When FCB moved for a distribution of the proceeds, West Central asked the Bankruptcy Court to require FCB to look first to the real estate mortgage to satisfy its debt. This concept is known as marshaling. The Bankruptcy Court denied West Central's marshaling request and awarded the $238,000 to FCB on November 28, 2011 because the Debtors' planned retention of the real estate would prejudice the senior creditor. However, the Bankruptcy Judge noted that "[i]f liquidation of the real estate occurs, the Court would consider revisiting the issue of marshaling." *Ferguson I*, 2011 WL 5910659, at *1 (Bankr. C.D. Ill. Nov. 28, 2011).

Confirmation of a proposed Chapter 12 plan was delayed while the Debtors awaited the Supreme Court's decision in *Hall v. United States*. 132 S. Ct. 1882 (2012). *Hall* ended up being unfavorable to the Debtors—the Court held that a Chapter 12 debtor's post-petition tax liabilities are not estate obligations payable with estate assets or eligible for treatment as an unsecured claim under § 1222(a)(2)(A). The Debtors filed an amended plan attempting to distinguish *Hall*, but the

2

Bankruptcy Judge denied confirmation. Thereafter, the Debtors voluntarily converted the bankruptcy proceeding from a Chapter 12 reorganization to a Chapter 7 liquidation. The newly appointed Chapter 7 Trustee sold the real estate at courtroom auction for $411,000, and the sale was confirmed on May 17, 2013. After FCB was paid the balance of its claim, about $261,000 remained in the estate for distribution.

West Central, anticipating the sale of the real estate, filed a restated motion to marshal assets on February 13, 2013, reminding the Bankruptcy Judge that the initial denial of its marshaling request contemplated the Debtors' retention of the real estate. The Debtors, the Trustee, and the United States objected, each assuming that the request would require recovery of the equipment and crop sale proceeds from FCB in order to turn them over to West Central. The Debtors' objection focused on the inequities they contended would result from allowing marshaling. In addition, they cited *In re Center Wholesale, Inc.*, 759 F.2d 1440 (9th Cir. 1985), describing it as holding that a "junior secured party was not entitled to marshal assets where doing so would prejudice the estate by lessening the amount to pay unsecured creditors." The Debtors and the United States also argued that "as there are not two funds belonging to the debtor, marshaling is not applicable," citing *In re Sherlock,* 2008 WL 4277719 (D. Kan. 2008).

The Bankruptcy Judge granted West Central's motion in its August 20, 2013 Opinion. He treated his prior order denying the original motion for marshaling as an interlocutory order, even though there was no reservation on the distribution to FCB. The Bankruptcy Judge observed that all three objections to marshaling assumed that disgorgement of the equipment and crop proceeds by FCB would be necessary to effectuate marshaling. The Bankruptcy Judge held that because money is fungible, the problem could be avoided by "netting." This required treating FCB as having received funds from the farm realty and treating an equivalent portion of the proceeds paid

3

to the Trustee from the real property as proceeds of the equipment and crops, as would have occurred if both had been liquidated together. In response to the argument that FCB had received the equipment and crop proceeds two years ago, the Court held that "marshaling rights are determinable based on the circumstances that existed when the bankruptcy case was filed" and that "[n]either conversion to chapter 7, nor the passage of time, alters the focus." Thus, the marshaling rights "that West Central had when the case was filed in 2010 ... have not changed." *Ferguson II*, 2013 WL 4482445 at *3 (Bankr. C.D. Ill. Aug. 20, 2013).

The United States, joined by the Debtors and Trustee, filed a motion to reconsider. The Bankruptcy Judge denied the motion to reconsider in its December 17, 2013 bench decision. The Bankruptcy Judge noted that when the case began, "the classic marshaling conditions were present" because FCB "had a first mortgage on real estate against which West Central had no mortgage" and "also held a first priority security interest in equipment and crop proceeds, and West Central had a second priority interest in that personal property collateral." *Ferguson II*, 10–81401, Doc. 403. The Bankruptcy Judge further reasoned that "[i]t was solely the inequity to First Community that led to denial of marshaling at that time." The Bankruptcy Judge granted marshaling once the farm was sold for the purpose of putting West Central and other unsecured creditors "in substantially the same position financially that they would have been in had marshaling been granted at the time of the filing or when it first came up in this case back in 2011." *Id.* The Bankruptcy Judge explained, "as I indicated in the second marshaling opinion that First Community will be considered to have been paid first from the real estate proceeds and West Central will be treated as being paid from the crop and equipment proceeds." *Id.*

The Debtors, Trustee and United States appealed the Bankruptcy Judge's Order. Following this Court's remand to complete the proceedings, on February 5, 2014 the Trustee filed the

4

Trustee's Final Report proposing a distribution to West Central in the amount of $176,330.49—its petition-date claim—subject to prior exhaustion of appeals. West Central objected, claiming it had a right to the full $238,130.03 in equipment and crop proceeds and post-petition interest because it was fully secured on the petition date and the real property would have fully covered FCB's senior lien with marshaling on that date.

The Debtors also objected to the final report, arguing that it "proposes to pay a debt that, at the time of conversion, was unsecured, in full; while leaving the Debtors with a substantial, non-dischargeable, priority claim." The United States filed a reply to West Central's objection arguing that if marshaling is measured as of the petition date then West Central should not receive post-petition interest. It also argued that the result was inequitable under all the circumstances. Finally, the government argued that the ongoing proceedings confirmed that the prior orders were interlocutory, so the motion to reconsider was not under Rule 59, and the § 544 issue should not be deemed waived under the circumstances. At a hearing on May 14, 2014, the Trustee joined the government's renewed request that the Court apply § 544 and reject marshaling.

In his June 18, 2014 Opinion, the Bankruptcy Judge agreed with West Central's objections to the Final Report. The Court held that marshaling was limited to allowing FCB to be "treated as being paid in full from the real estate proceeds, leaving the equipment and crop proceeds for the benefit of West Central." After that, the amount of West Central's claim was purely a matter of federal bankruptcy law—specifically, § 506(b), which allows interest and fees if the value of a creditor's collateral exceeds its claim. The Bankruptcy Judge again viewed marshaling as taking effect as of the petition date, when the value of the equipment and crops was presumably what they later sold for ($238,000). The Bankruptcy Court rejected the United States' argument that West Central's premature request for marshaling caused FCB's claim to accrue additional interest,

stating there was no factual support for this. The Bankruptcy Court also rejected as factually unsupported the United States' position that West Central was to blame for delaying the sale of the farm, stating that it was the Debtors who caused the delay by asking to postpone confirmation of their plan while *Hall* was pending. The Debtors, Trustee, and the United States appealed the Bankruptcy Judge's August 20, 2013 Opinion and Order granting West Central's request to marshal the liens of FCB and his December 18, 2013 Order denying their motion to reconsider.

In the prior appeal, the Trustee, Debtors, and United States raised the following issues: (1) whether the Bankruptcy Judge erred as a matter of law or abused his discretion in granting West Central's restated motion for marshaling and/or denying reconsideration of that ruling, and (2) whether the Trustee's rights pursuant to 11 U.S.C. § 544 were not waived and whether the Trustee's rights under §544 allow her to block marshaling.

This Court held that marshaling is proper only if two funds exist simultaneously. Because the money from one fund (the proceeds from the equipment and crops) had been paid out years ago, only the other fund (the proceeds from the land) still existed. Finding no Illinois precedent applying marshaling when only one fund existed, this Court instructed the Bankruptcy Judge to resolve the case without marshaling. *Ferguson III*, 2015 WL 5315612 (C.D. Ill. Sept. 11, 2015). West Central appealed.

West Central's appeal to the Seventh Circuit was dismissed for lack of jurisdiction because "[t]he *issue* of marshaling has been finally resolved in the district court, but the *dispute*—Who gets how much money?—remains open … [a]nd according to *Bullard* it's the dispute that matters to appellate jurisdiction." *Ferguson IV*, 834 F.3d 795, 800 (7th Cir. 2016). On remand, the Parties entered into a stipulation enabling the Bankruptcy Court to approve a revised final trustee report without prejudice to West Central's appeal rights.

## LEGAL STANDARD

This Court has jurisdiction to review the decision of the Bankruptcy Judge pursuant to 28 U.S.C. § 158(a). District courts are to apply a dual standard of review when considering a bankruptcy appeal. The findings of fact of the Bankruptcy Judge are reviewed for clear error, while the conclusions of law are reviewed *de novo*. *In re Midway Airlines*, 383 F.3d 663, 668 (7th Cir. 2003); *In re Smith*, 286 F.3d 461, 465 (7th Cir. 2002); *In re Yonikus*, 996 F.2d 866, 868 (7th Cir. 1993); *In re Ebbler Furniture and Appliances, Inc.*, 804 F.2d 87, 89 (7th Cir. 1986); see also, Bankruptcy Rule 8013 (1995).

## ANALYSIS

In this appeal, West Central designates two issues for review: (1) whether on remand from this Court the Bankruptcy Court erred as a matter of law in failing to approve payment of the secured claims of West Central in full with interest; and (2) whether on remand from this Court the Bankruptcy Court erred as a matter of law in failing to approve marshaling the assets of the Debtors. However, West Central's appeal of the Bankruptcy Court's decision is really a successive appeal challenging this Court's reversal of the Bankruptcy Court's August 20, 2013 Opinion and Order granting West Central's Motion to marshal assets. As discussed below, this Court remains unpersuaded by West Central's argument and affirms the Bankruptcy Court's January 5, 2017 Order.

*(1) Marshaling*

The traditional elements of marshaling are: (1) the existence of two creditors of the same debtor; and (2) the existence of two funds belonging to a common debtor; with (3) only one of the creditors having access to both funds; and with (4) the absence of prejudice to the senior secured creditor if the doctrine is applied. *Ferguson III*, 2015 WL 5315612 at *5 (C.D. Ill. Sept. 11, 2015);

*Meyer v. United States*, 375 U.S. 233 (1963); *Boone v. Clark*, 129 Ill. 466, 21 N.E. 850 (1889). In this Court's prior opinion, it found that marshaling was not appropriate because West Central failed to establish the second, third, and fourth elements.

Specifically, this Court found that the second marshaling element was not met because "the Debtors sold the crops and equipment and the proceeds were distributed to FCB in 2011 and 2012," and "[t]hus the proceeds from the crops and equipment were no longer part of the estate when the bankruptcy court ordered marshaling in 2013." *Id*. at *6. The Court found that West Central failed to satisfy the third marshaling element "because the only monies that remained were from the proceeds of the sale of real estate and FCB was the only remaining lien holder." *Id*. at *7. Lastly, this Court found that West Central failed to satisfy the fourth prong of the marshaling analysis because its security interest in the crops and equipment proceeds left the estate in 2011 and 2012. Thus, "it was not on equal footing at the time marshaling was ordered because FCB was a secured creditor whereas West Central was an unsecured creditor." *Id*. at *7.

West Central now argues that this Court: (1) incorrectly found that the Debtors did not have two funds available to them at the time the Bankruptcy Court granted West Central's restated motion to marshal assets; (2) incorrectly found that the proceeds from the sale of the Debtors' crops and equipment were no longer part of the estate when the Bankruptcy Court ordered marshaling in 2013; and (3) incorrectly found that the security interest of West Central ceased to exist at the time of the distribution to First Community, leaving West Central as an unsecured creditor. Doc. 3, at 22–26.

At the time West Central first requested marshaling, the first three elements were present but the fourth—the absence of prejudice to the senior secured creditor if the doctrine is applied— was not. As the Bankruptcy Court noted in its first order denying marshaling, "[b]ecause the

DEBTORS' plan proposes to retain the real estate, amortizing the loan over 20 years with a balloon payment after 7 years, application of the doctrine of marshaling, while favorable to WCFS, is detrimental to FCB." *Ferguson I*, 2011 WL 5910659 at *2. The Bankruptcy Court went on to explain that,

> [a]s applied by Illinois courts, marshaling is an either/or proposition. If the proper conditions for its application are not present, marshaling is rejected and the junior creditor is left with the natural consequences of its subordinate status. This Court is not aware of any reasoned basis to justify creating some kind of modified marshaling remedy in the name of equity.

*Id*. at *3. However, in subsequently granting West Central's restated motion to marshal assets, the Bankruptcy Court looked to the date of the first marshaling request to establish the first three elements, but then analyzed the fourth element as conditions existed in 2013. In reversing the Bankruptcy Court's subsequent order granting marshaling, this Court stated:

> The Bankruptcy Judge's reservation of West Central's marshaling request is inconsistent with his analysis that marshaling is an either/or proposition – the factors for marshaling are present or they are not. This Court agrees marshaling was not appropriate when West Central first made the request and finds that no subsequent actions that occurred throughout the course of these proceedings warranted marshaling.

*Ferguson III*, 2015 WL 5315612 at *6. Because three elements of marshaling were no longer present at the time marshaling was ordered, the Bankruptcy Court erred in granting West Central's marshaling request. West Central's instant appeal simply rehashes the same arguments made and dismissed in the prior appeal. This Court declines to reconsider its prior order reversing the Bankruptcy Court's August 20, 2013 marshaling Order, and therefore affirms the Bankruptcy Court's January 5, 2017 Order.

9

*(2) Strong-Arm Rights and Powers of Bankruptcy Trustee under § 544(a)*

Finally, in the joint brief[1] of the United States and Chapter 7 Trustee, the Appellees ask this Court to not only reaffirm its prior ruling that marshaling *should not* have been granted, but also to rule on whether marshaling *could ever* be granted against a bankruptcy trustee with its statutory strong-arm rights and powers under 611 U.S.C. § 544(a). Doc. 6, at 8–9. This Court's prior opinion declined to address the issue, reasoning that the marshaling issue was dispositive. Because the Court finds that marshaling was not appropriate under the specific facts presented here, it is unnecessary to address the broader question of a trustee's rights and powers under § 544.

## CONCLUSION

For the reasons stated above, the Bankruptcy Court's January 5, 2017 Order is AFFIRMED.

This matter is now terminated.

Signed on this 31st day of August, 2017.

<u>s/ James E. Shadid</u>
James E. Shadid
Chief United States District Judge

---

[1] The Debtor-Appellees filed their brief separately, but joined the United States and Trustee's argument regarding standing under § 544.